# JUNE TERM 1886.

JAMES R. STORRS v. JOHN WALLACE, EUGENE WALLACE, AND EDWARD LEONARD.

[See 48 Mich. 387.]

*Bona fide purchaser—Purchaser of mortgage and land with knowledge that his assignor and grantor holds same in trust—To be disposed of to raise money for use of owner—Who pays purchase price with owner's note, which he claims to have purchased of such grantor—And his own note— Is not a bona fide purchaser.*

Where a party purchased a mortgage and a parcel of land with knowledge that his assignor and grantor held the same in trust for the purpose of raising *money* by their *sale* for the *use* of the owner, and, instead of making a *cash* payment, turned out a note given by such owner, and which such purchaser claims to have purchased of such trustee, and his own note for the balance of the purchase money,—
    *Held*, that such facts are inconsistent with an honest design and a *bona fide* purchase of the land and mortgage.

Appeal from Shiawassee. (Newton, J.) Argued April 7, 1886. Decided June 10, 1886.

Bill to set aside deed and assignment of mortgage as fraudulent. Defendants appeal. Affirmed as to defendants Eugene Wallace and Edward Leonard, and dismissed as to defendant John Wallace.

[For a full understanding of this case, see *Storrs v. Scougale*, 48 Mich. 387.—REPORTER.]

*A. R. McBride* and *Selden S. Miner*, for complainant.

*G. R. Lyon*, for defendants Wallace.

CHAMPLIN, J. This case grows out of the same transactions
[437]

which are narrated in that of *Storrs v. Scougale,* reported in 48 Mich. 387. It was said in that case:

"The transactions whereby the frauds are supposed to have been consummated are singularly complicated, and to some extent have the appearance of having purposely been made so with a view to prevent their unravelment. The papers which were executed from time to time while they were going on have been very far from representing the true state of the dealings, and they have not always been in the hands of the party who, in the usual course of business dealing, would be expected to hold them."

The facts in this case present a striking example of the complication referred to, and of the manner in which the securities and titles were shifted from one person to another to carry out the purpose of defrauding complainant in the transaction.

When the case of *Storrs v. Scougale,* 48 Mich. 387, was before this Court, it appeared that what are known as the "Hughes mortgage" and the "Heirship land" were held by Scougale. Scougale himself testified that he held them, and John Wallace testified that they had been conveyed to Scougale. It also appeared that the mortgage taken by John Wallace from Scougale on the Venice farm was held by him. In other words, from all that appeared, the proper parties were before the Court to enable it to afford by its final decree complete relief. It turns out, however, that John Wallace had assigned and conveyed the mortgage on the Venice farm to his brother Eugene Wallace, and he had assigned it to his sister Kate Hacket, and at the time the case was disposed of in the Supreme Court she had commenced foreclosure.

After the final decree was rendered declaring the greater portion of that mortgage void for fraud, the foreclosure suit was stopped, and the mortgage has been discharged, and does not enter into the present controversy. It is mentioned here as showing the channel through which the fraudulent papers passed at the time of the occurrence.

It also turns out that the "Hughes mortgage," and the deed to the "Heirship property," instead of being held in the possession and name of Scougale, were transferred to Eugene

Wallace by Frank Scougale, February 19, 1880, who did not place the same upon record until March, 1882. In the meantime he never called upon Hughes for payment of interest, and asserted no title either to the land or mortgage.

He claims that Storrs and Scougale were both present when he was first spoken to about purchasing the Hughes mortgage and the land of Scougale, and that Storrs was fully aware and consented thereto; that Storrs told him that the mortgage and interest in the land had been placed in Scougale's hands to raise money upon; that he (Storrs) was expecting to go away soon, and would have to use some money, and wanted to raise money on this Hughes mortgage; that he never had any other conversation with Storrs about it, and in about ten days after he bought the mortgage and interest in the land from Scougale.

Other witnesses were introduced by the defendants to prove that Scougale and Storrs were talking of selling the mortgage to raise money for Storrs to go to Wisconsin with. He wanted to raise seven or eight hundred dollars for Storrs, and seemed very anxious to dispose of it, and offered it to different parties, stating he wanted to get the money on it. Eugene Wallace says that he bought the Hughes mortgage, which was given to secure $1,500, and Storrs' heirship interest in about 28 acres of land, for a little short of $1,200; that he held a note signed by Storrs, which he got of Scougale a short time before, for $360, drawing ten per cent. interest; and that he turned this note over to Scougale for $400, and gave him his due-bill for $800 due March 15, and then took up the due-bill, and gave Scougale his note for $800, drawing ten per cent. interest, payable in three months, and on May 25 following he paid the note by check on the First National Bank of Corunna. He says he destroyed the note when he paid it, but produces a check payable to Frank Scougale or bearer for $816.66.

There is no indorsement upon this check, and nothing to indicate to whom the money was paid thereon.

He says that he was fully informed, before his purchase from Scougale, that the mortgage and land were really the

property of Storrs, but were placed in Scougale's hands to enable him to raise money thereon.

These facts are inconsistent with a *bona fide* purchase of the mortgage and land. The primary object and purpose of selling the mortgage was to raise money to enable Storrs to go to Wisconsin. Scougale held it in trust for that purpose, and this was well known to Eugene Wallace; yet he makes the purchase, and, instead of paying money, turns out a note which he claims to have purchased of Scougale, and gives his due-bill due March 15. These facts are inconsistent with an honest design. If his story is true, he knew that Scougale was violating his trust. But, taken in connection with concurrent facts, it is conclusive that this was a part of the scheme developed at that time, and which this Court, in passing upon the facts before it in 48 Mich., pronounced a fraud upon the rights of complainant.

There is nothing in the record before us which entitles the complainant to any relief against John Wallace, and as to him the bill must be dismissed, with costs.

In every other respect, and against the other defendants, the decree below will be affirmed, with costs.

The other Justices concurred.